IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| THE HOUSING AUTHORITY OF THE CITY OF PITTSBURGH, | ) ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) ) ) | |
| v. | ) ) | Civ. No. 2:14-cv-00976 |
| ANGEL SMITH, | ) ) | Judge Maurice B. Cohill |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Pending before the Court is an Appeal from Bankruptcy Court [ECF No. 1] filed by the Housing Authority of the City of Pittsburgh ("HACP"). In its Appeal, HACP asserts that the Bankruptcy Court wrongly decided the case below in favor of Defendant, Angel Smith ("Smith"). More specifically, HACP asserts that the Bankruptcy Court relied on a flawed analysis when they found that Smith's public housing lease is akin to a "grant" under 11 U.S.C. § 525(a), and therefore, HACP may not evict Smith post-discharge without violating the discharge injunction or the anti-discrimination provisions of the Bankruptcy Code [ECF No. 10 at 7]. For the following reasons, we find in favor of HACP and reverse the decision of the Bankruptcy Court.

### I. Procedural History

Smith filed for protection under Chapter 13 of the Bankruptcy Code after failing to pay rent when due and failing to report all household income as required by the lease [ECF No. 10 at 8]. After several years in Chapter 13 bankruptcy, Smith fell behind in her monthly plan payments and converted her case to Chapter 7 bankruptcy [ECF No. 10 at 8]. Sixty (60) days

1

after Smith converted her case, Smith's lease was rejected as a matter of law pursuant to 11 U.S.C. § 365(d)(1)[1] [ECF No. 10 at 8]. HACP sought a declaratory judgment from the Bankruptcy Court regarding the effect of the Bankruptcy Code's anti-discrimination provision (11 U.S.C. § 525(a)) on a public housing authority lease [ECF No. 10 at 8]. Specifically, HACP sought a declaration that it could evict Smith without violating 11 U.S.C. §§ 524 or 525 [ECF No. 10 at 8]. The Bankruptcy Court ruled against HACP and held that a public housing lease was protected by 11 U.S.C. § 525(a) because it is a "similar grant" to a license, charter, permit or franchise, which are protected under the statute [ECF No. 10 at 8]. As a result, HACP filed the Appeal before this Court [ECF No. 1]. HACP filed a Brief in support of its Appeal on September 11, 2014 [ECF No. 10]. Smith filed a Brief in Opposition on October 27, 2014 [ECF no. 14]. HACP filed its Reply Brief on November 10, 2014 [ECF No. 16].

## II. Relevant Facts

Smith currently resides in the Homewood North Community, a community owned and operated by HACP [ECF No. 10 at 9]. The Homewood North Community contains only townhouse-type rental units each with features of a refrigerator, gas stove, free parking, and an enclosed yard as well as a community room [ECF No. 10 at 9]. The Homewood North Community also has added security with security cameras throughout the community and an on-site manager to assist the residents [ECF No. 10 at 9]. HACP considers Homewood North Community to be one of its more desirable communities which is evidenced by its waiting list of over 200 individuals and families who have expressed an interest in living there [ECF No. 10 at 9].

---

[1] Smith would have to cure the defaults under the Lease to avoid rejection of the Lease by the Chapter 7 Trustee. The Trustee could then assume the Lease and assign it to Smith. However, once the Lease has been rejected, which is undisputed in this case, pursuant to the Bankruptcy code, it is deemed to have been breached pre-petition and it is abandoned back to the Debtor and is no longer property of the bankruptcy estate. See 11 U.S.C. 365(g) [ECF No. 10 at 17].

2

Smith and HACP first entered into a Rental Lease Agreement ("Lease") on June 9, 2000 [ECF No. 10 at 10]. Smith moved to a new property in 2010 and signed an Addendum to the Lease ("Addendum") on May 18, 2010 [ECF No. 10 at 10]. On October 1, 2010 HACP and Smith entered a second Rental Lease Agreement ("2010 Lease"), which carried with it all of Smith's delinquencies under the original Lease and Addendum [ECF No. 10 at 10]. The terms of the 2010 Lease required Smith to go through an annual Re-Determination process, which includes reporting any changes in income to HACP within 10 days to ensure her eligibility for public housing and the accuracy of the rent calculation [ECF No. 10 at 10]. Smith defaulted under the terms of the 2010 Lease by failing to pay rent when due and by failing to disclose additional household income [ECF No. 10 at 10]. The failure to disclose the additional household income resulted in a significant back-charge of rent to Smith [ECF No. 10 at 10].

When Smith filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on March 10, 2009 she owed HACP over $8,500.00 in past due rent [ECF No. 10 at 11]. Subsequently Smith failed to make all of the payment due under her Chapter 13 Plan and by September 18, 2012 she still had $2,640.00 owing in past due plan payments [ECF No. 10 at 11]. Smith converted her Chapter 13 case to a Chapter 7 case on February 21, 2013 [ECF No. 10 at 11]. To date Smith has not cured the pre-conversion monetary defaults of the 2010 Lease, however, Smith still intends to remain in the HACP property [ECF No. 10 at 11]. HACP would like to evict Smith because of the failure to cure the defaults and because the Chapter 7 Trustee has rejected the 2010 Lease as part of the bankruptcy estate [ECF No. 10 at 11].

### III. Legal Analysis

11 U.S.C. § 525 ("Protection against discriminatory treatment") provides:

**(a)** . . . a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to

3

such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.
11 U.S.C.A. § 525 (West)

For Section 525(a) to apply, preventing HACP from evicting Smith the three following elements must be satisfied:

(1) The prohibitive conduct must have been performed by a governmental unit;

(2) The governmental unit must have denied, revoked, suspended or refused to renew a license, permit, charter, franchise or *other similar grant* (emphasis added) to the debtor; and

(3) The action must have been taken solely because the debtor filed for bankruptcy, was insolvent or failed to pay a debt that is subject to discharge.

In re Valentin, 309 B.R. 715, 720 (Bankr. E.D.Pa. 2004).

The second two elements are the issues in dispute in this case.

### A. Is a Lease a Grant?

The crux of the argument in this case is whether the eviction of Angel Smith would run afoul of Section 525(a) that aims at protecting bankruptcy debtors from discrimination in obtaining "licenses, permits, charters, franchises, or OTHER SIMILAR GRANTS" (*emphasis added*). More specifically, whether revoking the federally subsidized public housing tenancy benefits and lease, of a person who is a Chapter 7 debtor, for owing dischargeable past due rent is discrimination under the statute. Smith argues that a HACP lease would fall under the term "other similar grants," thus, making her eviction illegal, while HACP argues that a lease is not a grant and does not fall within the parameters of the statute. Both parties rely on what they

4

perceive as "precedent" for said issue. Indeed there have been conflicting outcomes among the Courts deciding this issue.

HACP argues there is established Third Circuit precedent that rejects the proposition that a public housing lease is a grant and claims the Bankruptcy Court erred by reading Section 525(a) expansively [ECF No. 10 at 14]. HACP declares there is no fundamental right to housing. See Lindsey v. Normet, 405 U.S. 56 (1972). There is no "constitutional or statutory duty to provide low income housing." Acevedo v. Nassau County, 500 F.2d 1078, 1080-81 (2d Cir. 1974). HACP uses the ruling in Watts v. Pennsylvania Housing Finance Co., 876 F.2d 1090 (3d Cir. 1989) to support its position. In the Watts case the Third Circuit Court of Appeals held that the denial of a Pennsylvania Homeowner's Emergency Mortgage Assistance Program loan by the Finance Agency due to a bankruptcy did not violate Section 525 because a loan "is not a 'license, permit, charter, franchise, or other similar grant.'" The Watts Court also stated, "[I]t seems perfectly clear that the items enumerated are in the nature of indicia of authority from a governmental unit to the authorized person to pursue some endeavor." Id. at 1093.

Using Watts as guidance, HACP asserts that a housing lease is not a vehicle by which a person pursues an endeavor. The items listed in Section 525 are different from a lease in that leases do "not directly enable their holders to engage in the kind of an income generating activity as do licenses, permits, charters and franchises." In re Stoltz, 315 F.3d 80 at 96 (2nd Cir. 2002) (C.J. Walker Dissent). HACP furthers its argument by stating that had Congress intended a lease to be part of the list of protected items it would have included leases in Section 525 as it does in other sections of the Bankruptcy Code such as 11 U.S.C. §§ 363, 365, 929 and 1169 [ECF No. 10 at 14].

5

The Bankruptcy Court in its decision in this case relied on the Second Circuit's decision in In re Stoltz, 315 F.3d 80 (2nd Cir. 2002) instead of Watts. The Court in Stoltz found that the application of "similar grant" includes leases. See id. at 89-90. The Stoltz Court using *Black's Law Dictionary* (9th ed. 2009) defines grant as "An agreement that creates a right or interest in favor of a person or that effects a transfer of a right or interest from one person to another. Examples include leases, easements, charges, patents, franchises, powers, and licenses." Stoltz, 315 F.3d at 89. Smith classifies the 2010 Lease as a grant under Section 525 relying on the decision in Stoltz and in her Brief, Smith refers to her lease as a "Public Housing Tenancy Grant" [ECF No. 14 at 16].

The reasoning behind the Court's interpretation that a Lease may be considered similar to a "grant" is that this decision supports the underlying bankruptcy policy of providing a debtor with a "fresh start." Smith relies on the legislative intent of Section 525(a) for this proposition. Namely, Smith contends that the purpose of the law is to promote the debtor's "fresh start" and eviction from one's home would certainly seriously inhibit one's livelihood or fresh start [ECF No. 14 at 12]. "[A] public housing lease is essential to a debtor's fresh start . . . an evicted debtor-tenant, along with any dependents, would quite possibly become homeless – a status not conducive to economic survival." Stoltz, 315 F.3d at 90 (*citations omitted*).

As stated above, HACP asserts that the listing of protected rights in Section 525 ("licenses, permits, charters, franchises, or other similar grants") should be read strictly as protecting vehicles that support "endeavors." Smith claims HACP's reading of the statute is too narrow and that the Statute has been interpreted broadly by several courts who included *inter alia*, right to a parking permit, right to the renewal of motor vehicle registration, and right to receive an academic transcript among the rights protected in Section 525 [ECF No. 14 at 17].

6

Smith views the list differently and claims that the commonality of the protected rights in Section 525 is that they are all unobtainable except through a particular governmental unit. If a debtor is deprived of that right, he/she cannot pursue it elsewhere [ECF No. 14 at 25]. Smith claims the same situation is true in this case. If she loses her Public Housing Lease she cannot obtain that lease elsewhere. HACP disagrees stating that Smith would not necessarily go homeless if she lost her public housing tenancy; there are alternatives to the Housing Authority lease such as the voucher program or an inexpensive home [ECF No. 16 at 8].

Finally, Smith claims precedent is on her side because all federal district courts faced with this question uniformly agree that Section 525(a) protects a Chapter 7 public housing tenant/debtor's receipt of continued public housing tenancy benefits, despite the tenant's non-payment of dischargeable pre-petition rent [ECF No. 14 at 14]. As one supporting authority, Smith cites to Biggs v. Housing Authority of the City of Pittsburgh, 2007 WL 654247 (W.D. Pa 2007),[2] where Judge Schwab adopted the Stoltz reasoning and held that Section 525(a) prevented HACP from pursuing state court eviction proceedings based upon the debtor having been insolvent, or a debtor under the bankruptcy code [ECF No. 14 at 14]. HACP contends that it is an overstatement to claim that all federal district courts uniformly agree that Section 525(a) protects public housing tenancy benefits and lists several cases that support its position [ECF No. 16 at 7]. HACP further argues that the Stoltz interpretation undermines the binding precedent of Watts [ECF No. 10 at 18].

We find that Smith's 2010 Lease may not be considered a "grant" under 11 U.S.C. § 525(a). The Court agrees with and chooses to follow the reasoning in Watts and finds that a

---

[2] The Biggs case was appealed and the appeal was dismissed as moot by the Third Circuit. Similar to our case at issue, the lease in the Biggs case was rejected by the Chapter 7 Trustee. Once the lease was rejected the automatic stay was terminated pursuant to 11 U.S.C. § 362(c)(2)(C). Therefore, the subsequent lifting of the stay by the Bankruptcy Court to allow for eviction and then the reinstatement of the stay by Judge Schwab was all moot. We view the Biggs case as informational but not as support.

7

lease does not have the same qualities as the other listed protected rights and, therefore, cannot be considered an "other similar grant" under the Statute. We also believe that had Congress intended a lease to be considered in the Statute it would have explicitly included leases in the language but it did not. We cannot speculate that Congress intended leases to be considered under Section 525 simply based on the "fresh start" analysis. Taking into account the legislative history noted in Smith's Brief, we realize that Congress did intend for a debtor to have a "fresh start," however, we don't believe that Congress intended that fresh start to be at the expense of the rights of the lease holder, HACP, or at the expense of the rights of the other low-income candidates who qualify for public housing. Furthermore, we believe that a fresh start can be obtained by the debtor through the mechanisms put into place by way of the bankruptcy proceedings. Finding that a lease is not a grant we may terminate our analysis here and find that HACP is not acting in a discriminatory fashion when proceeding in the eviction of Smith. However, we will continue our analysis to cover the third element of the law.

### B. Is the Eviction Discriminatory?

Assuming for argument sake that a lease may be considered a grant, we move to the third element in the legal analysis to determine whether eviction in this case would be considered discriminatory under Section 525. Section 525 protects a debtor from being evicted "solely because" she was a debtor in bankruptcy. HACP asserts that Smith's eviction is not solely because she was a debtor in bankruptcy [ECF No. 10 at 27]. In order to be considered discriminatory "the failure to pay must alone be the proximate cause of the cancellation, irrespective of motive." In re Valentin, 309 B.R. 715, 722 (Bankr. E.D. Pa. 2004). HACP claims because the 2010 Lease in this case was rejected by the Chapter 7 Trustee it is considered breached by operation of law once the bankruptcy is over [ECF No. 10 at 28], thus, HACP seeks

8

to evict because of the rejection of the Parties' 2010 Lease under 11 U.S.C. § 365(d) and the breach of contract.

If debtors wish to retain the benefits of unexpired leases, they must assume and/or cure any defaults under those contracts. See 11 U.S.C. § 365; In re Kiwi Intern. Air Lines, Inc., 344 F.3d 311, 317-18 (3d Cir. 2003). A breach created by the rejection and by 11 U.S.C. § 365(g) triggers rights and remedies available to the landlord under applicable state law. See In re Thompson-Mendez, 321 B.R. 814 (Bankr. D.MD. 2005). HACP asserts that the Debtor only has a contractual right to the Property if the Lease is complied with. The Housing Authority, therefore, can pursue its in rem rights as a landlord/creditor by evicting Smith because 11 U.S.C. § 525(a) is not intended to prohibit the Housing Authorities contractual rights to its real property as a creditor [ECF No. 10 at 31].

Smith asserts there is no evidence of record to dispute that HACP sought to terminate Smith's public housing tenancy *solely* because she failed to pay rent, a dischargeable debt [ECF No. 14 at 28]. Smith says the two concepts are intertwined and cannot be considered separately for eviction-sake. "[E]ven if [Reading Housing Authority] RHA asserted that it was only seeking to terminate its contractual relationship with Debtor based upon the Trustee's rejection, the inescapable conclusion is that the failure to pay pre-petition rent is the reason for the termination." In re Valentin, 309 B.R. at 722 n.11 [ECF No. 14 at 30]. The Supreme Court supported this contention in F.C.C. v. NextWave Personal Communications, Inc., 537 U.S. 293, 301 (2003):

> When the statute refers to failure to pay a debt as the sole cause of cancellation ("solely because"), it cannot reasonably be understood to include, among the other causes whose presence can preclude application of the prohibition, the governmental unit's motive in effecting the cancellation. Such a reading would deprive § 525 of all force. It is hard to imagine a situation in which a

9

✓ governmental unit would not have some further motive behind the cancellation."

In furtherance of this argument, Smith contests the assertion that HACP makes when saying the rejection by the Chapter 7 Trustee constitutes a breach of contract allowing for eviction. Smith asserts that rejection does not equate to termination [ECF No. 14 at 38].

> Rejection does not terminate an unexpired lease, but merely removes it as property of the estate. Because the lease is no longer estate property, "bankruptcy courts generally grant private landlords relief from the stay to exercise their state law remedy of ejectment" when the debtor has defaulted on the rejected lease. After the termination of the automatic stay which comes into place at the time of discharge under chapter 7, landlords can enforce their rights under the lease other than the right to collect the discharged debt. Stoltz v. Brattleboro Hous. Auth., 259 B.R. 255, 258 (D. Vt. 2001) aff'd sub nom. In re Stoltz, 315 F.3d 80 (2d Cir. 2002)(*internal citations omitted*)

Finally, Smith contends that Sections 525(a) and 365(b) cannot be read together. Section 525 is the more specific statute of the two statutes, and therefore, it should have controlling effect [ECF No. 14 at 42].

We agree that it is impossible to determine whether HACP would be evicting Smith solely because the she filed for bankruptcy, was insolvent, or failed to pay a debt that is subject to discharge. Indeed the facts of the case are that Smith was insolvent, failed to pay her debt, and filed for bankruptcy. However, in this case we also have present a rejection of the 2010 Lease by the Chapter 7 Trustee, which by operation of law places the "asset" outside of the bankruptcy estate but still in default. Furthermore, Smith failed to pay the debt or cure the default once the 2010 Lease was returned to her "possession." It is our understanding that Smith continues to be in default of the loan. Now, inconsequential of the bankruptcy proceeding, it is our opinion that HACP may assert its *in rem* rights and evict Smith based on their breached contractual agreement.

10

Finally, we don't believe that our finding in favor of HACP frustrates the intent of Congress to protect a debtor from discrimination nor do we believe it will frustrate a debtor's "fresh start." Mrs. Smith has been in default for over five years. While the eviction may provide an unpleasant reality to a debtor, certainly a debtor may still start anew and seek out housing that better suits her income. To allow her to continue under a breached lease that is in default indefinitely because she has been through Chapter 7 bankruptcy certainly usurps the *in rem* rights of HACP to its property and cannot possibly be the intent of Congress for the debtor to start anew.

## IV. Conclusion

Pursuant to the foregoing reasoning, we hold that Housing Authority of the City of Pittsburgh would not be in violation of 11 U.S.C. § 525(a) should it pursue eviction proceedings against Angel Smith due to her default under the terms and conditions of her public housing lease. We find that the lease is not a "grant" under the Section 525(a). Further, we find that the Housing Authority for the City of Pittsburgh has other plausible legitimate cause for evicting Angel Smith besides the fact that she was a Chapter 7 debtor who filed for bankruptcy, was insolvent or failed to pay a debt that is subject to discharge. For these reasons we reverse the decision of the Bankruptcy Court and remand for further proceedings.

An appropriate Order follows.

DATE: December 11, 2014

Maurice B. Cohill, Jr.
Senior United States District Court Judge